UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROBYN THORNTON                                                           PLAINTIFF

V.                              No. 4:20-CV-1064-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                        DEFENDANT

## ORDER

### I. Introduction

Plaintiff, Robyn Thornton, applied for disability benefits, alleging disability beginning on September 29, 2017. (Tr. at 34). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on February 7, 2020. (Tr. at 44). The Appeals Council denied Thornton's request for review (Tr. at 2), making the ALJ's denial of Thornton's application for benefits the final decision of the Commissioner.

Thornton filed this case seeking judicial review of the decision denying her benefits. For the reasons stated below, the Court[2] affirms the ALJ's decision.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5.*

## II. The Commissioner's Decision

The ALJ found that Thornton had not engaged in substantial gainful activity since the amended alleged onset date of September 29, 2017. (Tr. at 37). At Step Two of the five-step analysis, the ALJ found that Thornton had the following severe impairments: cervical and lumbar spine spondylosis; chronic obstructive pulmonary disease (COPD); neuropathy; bilateral knee osteoarthritis; rheumatoid arthritis; chronic pain syndrome; major depressive disorder; and bipolar disorder. (Tr. at 37).

After finding that Thornton's impairments did not meet or equal a listed impairment (Tr. at 38), the ALJ determined that Thornton had the ability to perform work at the light exertional level, except that: (1) she could never climb ladders, ropes, and scaffolds; (2) she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (3) work duties could not require operation of foot controls with the lower extremities or concentrated exposure to fumes, odors, or gases; (4) she would be limited to simple, routine, and repetitive tasks of specific vocational preparation (SVP) one to two that could be learned within 30 days; (5) she would require supervision that is simple, direct, and concrete; (6) the work could not require interaction with the general public; and (7) the work could have no more than occasional changes to work place setting. (Tr. at 39).

The ALJ determined that Thornton could not perform her past relevant work as a stock supervisor. (Tr. at 42–43). Relying upon Vocational Expert ("VE")

testimony, the ALJ found that, based on Thornton's age, education, work experience, and residual functional capacity ("RFC"), jobs existed in significant numbers in the national economy that she could perform, including positions as price marker and electrical accessories assembler. (Tr. at 44). Thus, the ALJ concluded that Thornton was not disabled. *Id.*

### III. Discussion

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a

3

mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Thornton's Arguments on Appeal

Thornton contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ: (1) erred in finding that her impairments did not meet the requirements of Listings 11.09 and 11.14; (2) failed to properly assess her mental impairments at Step Three; and (3) failed to incorporate all of her mental and physical limitations in her RFC. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Thornton first argues that the ALJ erred in finding that her impairments did not meet or equal Listing 11.14, governing peripheral neuropathy, and Listing 11.09, governing multiple sclerosis.[3] Although Thornton states that the ALJ concluded she

---

[3] Social Security listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial

4

did not meet these specific listings, she is mistaken with regard to Listing 11.09, which the ALJ did not specifically consider. The Commissioner points out that Thornton has never received a diagnosis for multiple sclerosis, and indeed Thornton has not alleged disability due to multiple sclerosis. Thornton's brief is not a model of clarity, but she does allege that her rheumatoid arthritis causes limitations which mirror the criteria of Listing 14.09, governing inflammatory arthritis—a listing which the ALJ specifically considered and rejected at Step Three. Thus, the Court will assume that Thornton intended to argue on appeal that she meets Listing 14.09, rather than Listing 11.09. In any event, Thornton has failed to demonstrate that her impairments meet the criteria for either of the relevant listings.[4] *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (claimant has burden to show impairment meets or equals a listing).

To establish an impairment from neuropathy that meets Listing 11.14, a claimant must show, among other criteria, that the neuropathy results in either: (1) a "marked" limitation in her physical functioning; or (2) "[d]isorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand

---

gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, if a claimant can show her impairments meet or equal a listing, she is presumed unable to work. *Id.*

[4] Listings 11.09 and 11.14 present identical requirements regarding motor and physical functioning. Thornton's failure to meet the criteria listed in 11.14 similarly constitutes failure to meet the criteria of 11.09.

up from a seated position, balance while standing or walking, or use the upper extremities."[5] A limitation is "marked" when the claimant is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities . . . such as standing, balancing, walking, [and] using both upper extremities for fine and gross movements[.]"[6] The medical evidence of record does not demonstrate that Thornton is so limited. Multiple clinical notes show normal sensation and strength in all of her extremities, with normal deep tendon reflexes. (Tr. at 16, 1544, 1585, 1602, 1616). While she did sometimes report gait disturbances (Tr. at 16, 1475, 1609), other clinical notes show her gait was normal and she was walking without assistive devices (Tr. at 1015, 1469, 1472, 1479, 1544, 1556). She had a positive bilateral straight leg raise test in December of 2019, but motor strength in her extremities was normal, and she denied having any numbness, weakness, or poor coordination. (Tr. at 16). On multiple visits, her pain management doctor advised her to stay active, maintain normal activities and avoid extended bed rest. (Tr. at 1603, 1618). Although she intermittently complained of pain or swelling in her hands, wrists, and elbow, there is no indication in the record that the use of either of her upper extremities was particularly limited during the relevant time

---

[5] 20 C.F.R. Pt. 404, subpt. P, app. 1 § 11.14.

[6] 20 C.F.R. Pt. 404, subpt. P, app. 1 § 11.00G2a.

6

period. (Tr. at 1556, 1585). Thornton fails to show her neuropathy meets listing-level severity.

Nor has Thornton shown that her impairments from rheumatoid arthritis meet the criteria for Listing 14.09. As explained above, she has not demonstrated an inability to effectively ambulate or perform fine and gross movements. She has not pointed to evidence showing the involvement of two or more organs or body systems, nor has she directed the Court to evidence of ankylosing spondylitis or other spondyloarthropathies. And although the medical record certainly establishes that she suffers from rheumatoid arthritis, Thornton has not presented evidence documenting "repeated manifestations" of the disease occurring with the requisite frequency and severity contemplated by the listing.[7] *See Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (diagnosis alone does not demonstrate condition meets a listing). Substantial evidence supports the ALJ's conclusion that Thornton did not meet the requirements for presumptive disability based on rheumatoid arthritis.

Thornton also argues the ALJ erred in his assessment of whether her limitations from bipolar disorder met Listing 12.04. She argues the ALJ failed to address two of the "paragraph B" criteria: her ability to interact with others and her ability to concentrate, persist, or maintain pace. Again, Thornton appears to be mistaken, since the ALJ specifically found that she had moderate limitations in these

---

[7] 20 C.F.R. Pt. 404, subpt. P, app. 1 § 14.09D.

areas. (Tr. at 39). The Court declines Thornton's invitation to re-weigh the evidence and instead finds that the ALJ adequately supported his findings by citing to her activities of daily living and to her mental status examinations, which showed generally benign signs such as being active and alert to person, place, and time, and displaying normal mood, normal affect, normal attention span, normal concentration and good judgment. (Tr. at 39). The Court finds no error in the ALJ's assessment of her mental impairments at Step Three.

Thornton argues the ALJ should have considered whether exacerbations of her bipolar disorder would cause excessive absenteeism, rendering her unable to work. The Court will construe this argument as a challenge to the ALJ's RFC determination regarding her mental impairments. As for her physical impairments, Thornton challenges the ALJ's failure to include limitations in her RFC relating to limited grip and strength in her hands and her inability to perform fine and gross manipulation.

A claimant's RFC represents the most she can do despite the combined effects of all her credible limitations. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The RFC is a medical question which must be supported by some medical evidence regarding a claimant's ability to function in the workplace, but the ALJ may consider all record evidence in its analysis. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

In this case, the ALJ considered the medical record, including medical opinion evidence, Thornton's activities of daily living, and her subjective testimony.

The ALJ considered Thornton's mental impairments and found they supported a restriction to simple, routine tasks with reduced social and adaptive requirements. (Tr. at 42). The ALJ found no greater mental limitations were appropriate, considering Thornton's minimal pursuit of mental health treatment and minimal observed abnormal signs outside of depressed or anxious mood and a single instance of agitated behavior and avoidant eye contact. *Id.* After reviewing the evidence, the Court finds that the ALJ did not disregard evidence or overlook any of Thornton's alleged limitations from her mental impairments. Accordingly, the Court finds no error in the ALJ's failure to specifically address her potential absenteeism. *See McCoy*, 648 F.3d at 615 (ALJ not required to "mechanically list and reject every possible limitation"). Thornton has failed to demonstrate that she has greater limitations from her mental impairments than those already accounted for in her RFC. *See Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (burden of persuasion to demonstrate RFC remains with claimant).

Similarly, the ALJ found that Thornton's subjective complaints about her hand strength and manipulative abilities were inconsistent with the generally normal clinical findings in the record, discussed above, which showed normal sensation and strength in Thornton's extremities. The ALJ also found that her complaints were

9

inconsistent with her daily activities, which included driving, maintaining her personal hygiene, and performing household chores like vacuuming and dusting. (Tr. at 102, 110). The ALJ appropriately determined Thornton's RFC based on those impairments which the ALJ found credible. *See McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003). Moreover, the ALJ's findings were consistent with those of medical professionals. Accordingly, the RFC determination is supported by substantial evidence in the record as a whole.

## IV. Conclusion

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Thornton was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 30th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE